IN THE UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

IN RE:    LOWRY FARMS, INC.                  CASE NO. 1:24-bk-70535
                                                             CHAPTER 7

M. Randy Rice, Trustee,

    Plaintiff,

v.

F & T Labor Consultants, LLC,
KRF Consultant, Inc.,
Kimberly Renee Ferrell, and
Marcos Torres aka Dioscoro Torres,

    Defendants.

## COMPLAINT

Comes now the Plaintiff, M. Randy Rice, Chapter 7 trustee of the above estate (hereafter referred to as "Plaintiff"), and for his Complaint requests this Court to set aside fraudulent conveyances and/or preferential transfers of cash and other personal property, to Order Defendants to turnover said cash and personal property to Plaintiff, and for Judgment against Defendants. In support of his Complaint, Plaintiff states and alleges as follows:

1.    On April 1, 2024, Lowry Farms, Inc. filed a Chapter 7 bankruptcy petition in the United States Bankruptcy Court, Western District of Arkansas.

Plaintiff was subsequently appointed Trustee in the above estate. It is in his capacity as Trustee that the Plaintiff brings this action.

2. This Court has jurisdiction of this matter pursuant to 28 U. S. C. § 157, 11 U. S. C. §§ 101, *et seq*, 11 U. S. C. § 363, and 11 U. S. C. § 541. Plaintiff further states that this is a core proceeding.

3. This matter constitutes an Adversary Proceeding pursuant to 28 U.S.C. § 157(b)(1) and (2) and Rule 7001(3) of the Federal Rules of Bankruptcy Procedure and is filed pursuant to provisions of the Bankruptcy Code.

4. Debtor Lowry Farms, Inc. is an Arkansas corporation that operated for almost 20 years prior to the filing of this bankruptcy proceeding in April of 2024. Debtor was primarily engaged as a farm labor contractor that supplied migrant labor to farms in Louisiana to plant sugarcane.

5. Non-party Michael Clayton Lowry ("Clay Lowry") is an adult resident of Bradley County, Arkansas and was the 100% owner of Debtor, Lowry Farms, Inc., during all times relevant to the facts alleged in this Complaint.

6. During the time period relevant to the facts alleged in this Complaint, non-party Clay Lowry was also 100% owner of CL-3 Logging, Inc., an Arkansas corporation that was utilized by Debtor and Clay Lowry to transfer and co-mingle funds between the Debtor, CL-3 Logging, Inc., and Clay Lowry, personally, and which was also used to make transfers of assets of the Debtor to the Defendants as a

way to avoid the creditors of Debtor.

7. Debtor and non-party CL-3 Logging, Inc. were alter egos of each other, as well as alter egos of non-party Clay Lowry such that the assets of Debtor, CL-3 Logging, Inc., and Clay Lowry were interchangeable.

8. Defendant F & T Labor Consultants, LLC is an Arkansas limited liability corporation established on or about September 8, 2023.

9. On information and belief, Defendant F & T Labor Consultants, LLC is owned and operated by Defendant Kimberly Renee Ferrell and Defendant Marcos Torres aka Dioscoro Torres.

10. Defendant Kimerly Renee Ferrell ("Defendant Ferrell") is an adult resident of Ashley County, Arkansas.

11. Defendant Ferrell was a longtime employee and corporate officer of Debtor, Lowry Farms, Inc. As a result of her employment with the debtor, Defendant Ferrell had access to the debtor's bank accounts, financial information, and was responsible for payroll processing, accounts payable and receivable, client relations, and various other tasks associated with the management of the day-to-day business of the Debtor over the course of many years. Defendant Ferrell had control over the Debtor's financial decisions during at least the 5 years prior to the filing of Debtor's bankruptcy petition.

12. Defendant Ferrell was an insider of Debtor within the meaning of the

bankruptcy code during at least the 5 years prior the filing of Debtor's bankruptcy petition.

13.  In addition to her employment for Debtor Lowry Farms, Inc., Defendant Ferrell was also responsible for overseeing the finances and bank accounts of the owner of the Debtor, non-party Clay Lowry, as well as several corporations closely related to the Debtor and operated by the owner of the Debtor, including CL-3 Logging, Inc. and Clay Lowry Forestry, Inc. Defendant Ferrell had control over Mr. Lowry's and the related entities' financial decisions during at least the 5 years prior to the filing of Debtor's bankruptcy petition.

14.  Defendant Ferrell is also the owner and operator of Defendant KRF Consultant, Inc.  Defendant KRF Consultant, Inc. is an Arkansas corporation that received various payments from Debtor and related entities during the course of the two years prior the filing of this bankruptcy proceeding.

15.   Defendant Marcos Torres aka Dioscoro Torres ("Defendant Torres") is an adult resident of Bradley County, Arkansas.  Defendant Torres is also known by the name Dioscoro Torres and funds that are the subject of this Complaint were transferred to Defendant Torres under the name Dioscoro Torres by Debtor on at least one occasion.

16.  Defendant Torres was a longtime employee of Debtor Lowry Farms, Inc. and its closely related companies, CL-3 Logging, Inc. and Clay Lowry Forestry,

Inc. Defendant Torres was responsible for overseeing the work of migrant labor crews employed in the hand planting of sugarcane pursuant to contracts between Debtor Lowry Farms, Inc. and numerous farms that were clients of Debtor. Defendant Torres had significant responsibilities with respect to the payment of labor of migrant work crews employed by debtor, which was the largest expense of the debtor's labor contracting business.

17. Defendant Torres was an insider of Debtor within the meaning of the bankruptcy code during at least the 5 years prior the filing of debtor's bankruptcy petition.

18. During each year from at least 2016 through 2023, Debtor Lowry Farms, Inc. operated a labor contracting business that supplied labor to sugarcane farms in Louisiana to hand-plant sugarcane.

19. For the years 2016 through 2019, Debtor Lowry Farms, Inc. was alleged in a lawsuit that was filed in 2020 to have underpaid a class of migrant workers brought to the United States pursuant to the federal H-2A visa program a sum of wages totaling more than $2 million. That case is styled Antonio-Benito, et al. v. Lowry Farms, Inc., et al., Case No. 1:20-cv-1039-SOH, filed in the United States District Court for the Western District of Arkansas (the "Federal Lawsuit").

20. Defendants were aware of the Federal Lawsuit pending against Debtor. Defendants Ferrell and Torres each provided sworn deposition testimony in that

matter, with Defendant Ferrell being appointed the corporate representative for the Debtor to testify on three separate occasions pursuant to Federal Rule of Civil Procedure 30(b)(6).

21. During the two years prior to the filing of this bankruptcy petition, Defendants knowingly and intentionally assisted in concealing and transferring the Debtor's assets from its creditors, and the migrant workers who alleged they were underpaid more than $2 million as part of the Federal Lawsuit.

22. During the 2023 sugarcane planting season, Debtor Lowry Farms, Inc. had a number of contracts to plant sugarcane for farmers in Louisiana, just as it had in many prior years.

23. To meet its obligations under the contracts in 2023, Debtor applied for and was granted permission to employ foreign workers pursuant to the federal H-2A visa program, just as it had in many prior years.

24. During the 2023 sugarcane planting season, Debtor did in fact employ numerous H-2A workers to plant sugarcane for its clients in Louisiana, just as it had done in many prior years. Those workers were paid with checks issued by Debtor Lowry Farms, Inc. that were drawn on the Lowry Farms, Inc. bank account.

25. Debtor Lowry Farms, Inc. performed the 2023 work pursuant to its contracts with farmers in Louisiana by utilizing a number of vehicles that were titled

in the name of Lowry Farms, Inc. and that were insured by Lowry Farms, Inc., just as it had done in many prior years.

26. The 2023 work performed by Debtor Lowry Farms, Inc. employees pursuant to its contracts with farmers in Louisiana was overseen by Defendants Ferrell and Torres, who were each paid by Lowry Farms, Inc. for their work as employees of the Debtor and who received those payments from checks drawn on the Lowry Farms, Inc. bank account, just as was done in many prior years.

27. Debtor Lowry Farms, Inc. sent invoices to its customers for the 2023 sugarcane planting work and was paid by its customers for the work in 2023, just as had been done in many prior years. Payments for this work were often by check, with those checks made payable to Debtor Lowry Farms, Inc. and deposited into the Lowry Farms, Inc. bank account, just as had been done in many prior years.

**TRANSFERS TO DEFENDANT F & T LABOR CONSULTANTS, LLC**

28. Fraudulent conveyances and/or preferential transfers of money that was the property of Lowry Farms, Inc. were made from the bank account of Debtor Lowry Farms, Inc. to Defendant F & T Labor Consultants, LLC on a number of occasions in 2023 and 2024 prior to the filing of this bankruptcy petition, starting shortly after F & T Labor Consultants was formed in September of 2023. The total of these transactions was at least $280,000.00, as detailed below in paragraphs 29-

33. These funds were transferred from Debtor to Defendant F & T Labor Consultants as a way to conceal assets and avoid Debtor's creditors.

29. On or about September 21, 2023, a check from Debtor Lowry Farms, Inc. in the amount of $50,000 was provided to Defendant F & T Labor Consultants, LLC and deposited into the F & T Labor Consultants, LLC bank account, although the check misstated the name of the entity as T & F Labor Consultants, LLC. The memo line of the check says "loan repayment" even though at the time there was never any loan provided to Debtor by F & T Labor Consultants, LLC. The check was signed by non-party Clay Lowry.

30. On or about September 22, 2023, a check from Debtor Lowry Farms, Inc. in the amount of $75,000 was provided to Defendant F & T Labor Consultants, LLC. The memo line of the check says "loans" even though at the time there was never any loan provided to Debtor by F & T Labor Consultants, LLC. The check was signed by Defendant Ferrell.

31. On or about October 5, 2023, a check from Debtor Lowry Farms, Inc. in the amount of $100,000 was provided to Defendant F & T Labor Consultants, LLC. The memo line of the check says "loans" even though at the time there was never any loan provided to Debtor by F & T Labor Consultants, LLC. The check was signed by Defendant Ferrell.

32. On or about October 10, 2023, a check from Debtor Lowry Farms, Inc. in the amount of $25,000 was provided to Defendant F & T Labor Consultants, LLC. The memo line of the check says "loans" even though at the time there was never any loan provided to Debtor by F & T Labor Consultants, LLC. The check was signed by Defendant Ferrell.

33. On or about January 23, 2024, a check from Debtor Lowry Farms, Inc. in the amount of $30,000 was provided to Defendant F & T Labor Consultants, LLC. The memo line of the check says "loan repayment" even though there was never any documented loan provided to Debtor by F & T Labor Consultants, LLC. The check was signed by Defendant Ferrell.

34. In addition to the funds that were transferred to Defendant F & T Labor Consultants, LLC, the titles to at least 28 vehicles were fraudulently transferred and/or preferentially transferred by Debtor to Defendant F & T Labor Consultants, LLC in the 30 days prior to the filing of Debtor's bankruptcy. Prior to the transfers, the vehicles had been titled in the name of the Debtor and had been used in Debtor's labor contracting business.

35. The transfer of the vehicles described above was done without consideration, for no exchange of funds or anything of value to Debtor and was done as a way to conceal assets and avoid Debtor's creditors.

## TRANSFERS TO DEFENDANT KRF CONSULTANT, INC.

36. During the two years prior to the filing of Debtors' bankruptcy petition, fraudulent conveyances and/or preferential transfers of money that was the property of Lowry Farms, Inc. were made to Defendant KRF Consultant, Inc.

37. Some of the fraudulent conveyances and/or preferential transfers to Defendant KRF Consultant, Inc. were made by Debtor directly, while others were made by transferring funds first from Debtor to an alter ego entity called CL-3 Logging, Inc. and then transferring the money to Defendant KRF Consultant, Inc.

38. Defendant Ferrell maintained control of the bank accounts and financial records of all entities involved in these transfers: Defendant KRF Consultant, Inc., CL-3 Logging, Inc., and Debtor Lowry Farms, Inc.

39. During the two years prior the filing of Debtor's bankruptcy at least $168,500 was transferred from Debtor to its alter ego, CL-3 Logging, Inc., via transactions from Debtor's bank account at Warren Bank and Trust. Those funds legally remained the property of Debtor.

40. During 2022, 2023, and 2024, funds that had been deposited into the CL-3 Logging, Inc. account were then transferred from CL-3 Logging, Inc. to Defendant KRF Consultant, Inc. as a way to conceal assets and avoid Debtor's creditors. Those transfers totaled more than $40,000.00.

41. In addition, funds were fraudulently conveyed and/or preferentially transferred to Defendant KRF Consultant, Inc. directly by Debtor as a way to conceal assets and avoid Debtor's creditors. The total of these additional transactions was at least $21,300.00, as detailed below in paragraphs 42-45.

42. On or about September 22, 2023, a check from Debtor Lowry Farms, Inc. in the amount of $3,800 was provided to Defendant KRF Consultant, Inc. The check was signed by Defendant Ferrell.

43. On or about October 10, 2023, a check from Debtor Lowry Farms, Inc. in the amount of $5,000 was provided to Defendant KRF Consultant, Inc. The check was signed by Defendant Ferrell.

44. On or about November 15, 2023, a check from Debtor Lowry Farms, Inc. in the amount of $2,500 was provided to Defendant KRF Consultant, Inc. The check was signed by Defendant Ferrell.

45. On or about December 8, 2023, a check from Debtor Lowry Farms, Inc. in the amount of $10,000 was provided to Defendant KRF Consultant, Inc. The check was signed by Defendant Ferrell.

**TRANSFERS TO DEFENDANT KIMBERLY RENEE FERRELL**

46. During the two years prior to the filing of Debtors' bankruptcy petition, fraudulent conveyances and/or preferential transfers of money that was the property of Lowry Farms, Inc. were also made to Defendant Ferrell, personally.

47. As with the transfers to Defendant KRF Consultant, Inc., some of the fraudulent conveyances and/or preferential transfers to Defendant Ferrell were made by Debtor directly, while others were made from the funds that had been transferred to the CL-3 Logging, Inc. alter ego account. These funds were transferred as a way to conceal assets and avoid the Debtor's creditors. The total sum of the transfers to Defendant Ferrell was at least $32,400.00, as detailed below in paragraphs 48-52.

48. On or about November 14, 2022, Defendant Ferrell made a counter cash withdrawal of funds from the alter ego CL-3 Logging, Inc. account in the amount of $9,000.00.

49. On or about September 22, 2023, Defendant Ferrell made a counter cash withdrawal of funds from the alter ego CL-3 Logging, Inc. account in the amount of $9,700.00. This is the same day that funds in the amount of $75,000.00 were also transferred via check from Debtor Lowry Farms, Inc.'s account to Defendant Ferrell's newly formed company, F & T Labor Consultants, LLC.

50. On or about March 31, 2023, Defendant Ferrell made three separate counter cash withdrawals of funds from the Debtor Lowry Farms, Inc.'s account in the total amount of $7,700.00.

51. On or about August 16, 2023, Defendant Ferrell made a counter cash withdrawal of funds from the Debtor Lowry Farms, Inc.'s account in the amount of $1,000.00.

52. On or about August 22, 2023, Defendant Ferrell made a counter cash withdrawal of funds from the Debtor Lowry Farms, Inc.'s account in the amount of $5,004.00.

## TRANSFERS TO DEFENDANT MARCOS TORRES

53. During the two years prior to the filing of Debtors' bankruptcy petition, fraudulent conveyances and/or preferential transfers of money that was the property of Lowry Farms, Inc. were also made to Defendant Marcos Torres aka Dioscoro Torres.

54. These fraudulent conveyances and/or preferential transfers were made from the bank account of Debtor Lowry Farms, Inc. to Defendant Torres on a number of occasions in 2023 and 2024 prior to the filing of this bankruptcy petition. The total of these transactions was at least $75,000.00, as detailed below in paragraphs 55-61. These funds were transferred from Debtor to Defendant Torres as a way to conceal assets and avoid Debtor's creditors.

55. On or about August 18, 2023, a check from Debtor Lowry Farms, Inc. in the amount of $5,000 was provided to Defendant Torres. The memo line of the check says "repay loan" even though there was never any documented loan provided to Debtor by Defendant Torres. The check was signed by Defendant Ferrell.

56. On or about September 18, 2023, a check from Debtor Lowry Farms, Inc. in the amount of $5,000 was provided to Defendant Torres. The memo line of

the check says "repay loan" even though there was never any documented loan provided to Debtor by Defendant Torres. The check was signed by Defendant Ferrell.

57. On or about September 22, 2023, a check from Debtor Lowry Farms, Inc. in the amount of $15,000 was provided to Defendant Torres. The memo line of the check says "repay loan" even though there was never any documented loan provided to Debtor by Defendant Torres. The check was signed by Defendant Ferrell. This transaction occurred on the same date that a transfer in the amount of $75,000 was made from Debtor to Defendant F & T Labor Consultants, LLC, the company that, on information and belief, Defendant Torres is part owner. It also occurred one day after a $50,000 transfer was made from Debtor to Defendant F & T Labor Consultants, LLC.

58. On or about September 27, 2023, a check from Debtor Lowry Farms, Inc. in the amount of $25,000 was provided to Defendant Torres. The memo line of the check says "repay loan" even though there was never any documented loan provided to Debtor by Defendant Torres. The check was signed by Defendant Ferrell.

59. On or about September 27, 2023, a second check from Debtor Lowry Farms, Inc., this one in the amount of $5,000 was provided to Defendant Torres. The memo line of the check says "repay loan" even though there was never any

documented loan provided to Debtor by Defendant Torres. The check was signed by Defendant Ferrell.

60. On or about October 5, 2023, a check from Debtor Lowry Farms, Inc. in the amount of $5,000 was provided to Defendant Torres. The check was signed by Defendant Ferrell.

61. On or about January 23, 2024, a check from Debtor Lowry Farms, Inc. in the amount of $15,000 was provided to Defendant Torres, with the check made out to "Discoro Torres"—a name by which Defendant Torres is known. The memo line of the check says "professional fees" even though there were never any documented professional services provided to Debtor by Defendant Torres. The check was signed by Defendant Ferrell.

62. The transfers of money and vehicles as described above to the various Defendants was done with actual intent to hinder, delay, or defraud creditors of Debtor's bankruptcy estate.

63. Debtor was insolvent on the date that the transfers were made or became insolvent as a result of said transfers, and/or transferred the interests to or for the benefit of insiders, Defendant Ferrell, Defendant Torres, and their corporate entity Defendant F & T Labor Consultants, LLC.

64. At the time that the transfers outlined above were made the Debtor had substantial contested and uncontested debts owed to various creditors, many of

which are detailed in Debtors' schedules filed as part of this bankruptcy proceeding, which listed more than $2 million in liabilities. Those schedules listing more than $2 million in liabilities did not include a dollar figure on the more than $2 million in back wages that were claimed to be owed by former employees. (ECF No. 24).

65. All of the debts that gave rise to this bankruptcy filing pre-dated the transfers to Defendants outlined above. For example, Defendants' schedules list more than $400,000 that were due to creditors for loans obtained in 2022. (ECF No. 24 at p. 8-9).

66. The transfers made to Defendants as outlined above exacerbated the Debtor's financial condition at a time when it was already insolvent and were done with the actual intent to hinder, delay, or defraud creditors of Debtor's bankruptcy estate.

67. The transfers made to Defendants as outlined above are avoidable fraudulent conveyances within the meaning of 11 U.S.C. § 548.

68. In the alternative, the transfers made to Defendants as outlined above are avoidable preferential transfers to insiders within the meaning of 11 U. S. C. § 547.

69. Plaintiff is entitled to a judgment against Defendants for damages caused by the fraudulent transfers and/or preferential transfers in an amount to be

determined by the Court. Plaintiff is also entitled to interest from the date of the fraudulent and/or preferential transfers.

70. Plaintiff requests that this Court enter an Order avoiding the fraudulent and/or preferential transfers described above, as well as any additional fraudulent and/or preferential transfers that may be proven at the trial of this matter with respect to these Defendants.

71. Plaintiff further requests the Court enter an Order instructing the Defendants to turnover all assets to the Plaintiff that were fraudulently and/or preferentially transferred.

72. Plaintiff further requests that the avoided transfers be preserved for the benefit of the estate pursuant to 11 U.S.C. § 551.

73. Plaintiff reserves the right to amend this Complaint upon the completion of discovery.

WHEREFORE, Plaintiff prays that this Court Finds and Orders that the transfers made to Defendants from assets of the Debtor as outlined above are avoidable under 11 U. S. C. § 547 and/or 11 U.S.C. § 548. Plaintiff prays for Judgment against Defendants, individually and severally. Plaintiff further prays that all avoided transfers be preserved for the benefit of this estate and for all other appropriate relief which the estate may be entitled.

Respectfully Submitted,

/s/ James M. Knoepp
James M. Knoepp, *Pro Hac Vice*
GA Bar Number 366241
SC Bar Number 102757
Email: jknoepp@gmail.com
1612 Crestwood Drive
Columbia, SC 29205
Telephone: (828) 379-3169

Scott D. McCoy, *Pro Hac Vice*
FL Bar Number 1004965
Southern Poverty Law Center
Email: scott.mccoy@splcenter.org
2 S. Biscayne Blvd., Suite 3750
Miami, FL 33131
Telephone: (334) 922+0293

*Special Counsel for Trustee*


/s/ M. Randy Rice, Trustee
124 W. Capitol, Suite 1850
Little Rock, AR 72201
Telephone: (501) 374-1019
Email: randyrice2@comcast.net